**KNOLL ASSOCIATES, INC., a New York corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 15900.**

United States Court of Appeals Seventh Circuit.

June 18, 1968.

Jacob Imberman, George G. Gallantz, Morton M. Maneker, Lawrence J. Rothenberg, New York City, for petitioner; Proskauer Rose Goetz & Mendelsohn, New York City, of counsel.

J. B. Truly, Asst. Gen. Counsel, E. K. Elkins, Atty., Federal Trade Commission, Washington, D. C., James McI. Henderson, Gen. Counsel, for the Federal Trade Commission.

Before SCHNACKENBERG, SWYGERT and CUMMINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Knoll Associates, Inc., a New York corporation, petitioner, seeks our review of an order issued on August 2, 1966 by

the Federal Trade Commission requiring it, directly or through its parent corporation, Art Metal, Inc., or otherwise, in connection with the sale of furniture and furniture products in commerce, to cease and desist from—

> Discriminating, directly or indirectly, in the price of such furniture and furniture products of like grade and quality by selling to any purchaser at net prices higher than the net prices charged any other purchaser who competes with the purchaser paying the higher price.

The Commission found a violation of § 2(a) of the Clayton Act, as amended 15 U.S.C. § 13(a), which provides in part:

> That it shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *.

Certain issues explicitly raised by petitioner refer to the Commission's determination that its purchasers include interior designers, that discriminations may cause injury to competition with favored customers, to the rejection of petitioner's affirmative defense that its discriminations had been made to meet the equally low prices of competitors, and to the fact that the Commission improperly admitted into evidence and relied on documents stolen by one Herbert Prosser, an employee in the Detroit showroom of petitioner's sales representative, Joseph Dworski, and by Prosser sent to counsel for the Commission, as well as other evidence obtained from the stolen documents by Commission counsel.

This proceeding was commenced by the issuance of a complaint on December 27, 1962, charging that Knoll discriminated in price between competing purchasers of its products in violation of § 2(a) of the act. Such purchasers were said to include those classified by it as architects, interior designers, contract houses, interior decorators, office furniture dealers, and furniture or department stores. Knoll admitted charging some purchasers list prices less 50% and other purchasers in the same cities list prices less 40%, but denied that the sales to architects, interior designers and interior decorators were for resale by them, that there existed potential competitive injury, and asserted that its 50% discounts were made in good faith to meet equally low prices of a competitor as permitted by § 2(b).

An examiner held hearings and received evidence offered by the Commission and by Knoll on the issues.

On February 24, 1964, pursuant to a notice of a hearing to be held March 9, 1964 to receive Commission evidence in rebuttal of Knoll's affirmative defense, Knoll was served with a request by the Commission counsel to admit the authenticity of certain documents. These documents later were shown to have been stolen by Herbert Prosser, an employee of Dworski, Knoll's exclusive sales representative in Detroit, from its Detroit showroom. This appeared when Knoll called for the production of all such documents and a full hearing and full disclosure of all the facts as to how the documents were procured. At a hearing held on March 17, 1964, Knoll called several witnesses in support of its motion, including Herbert Prosser, and then sought unsuccessfully to have the Commission counsel testify. Knoll's motion to suppress the documents admittedly taken, from its showroom was denied by the examiner and the Commission.

The examiner found *inter alia* that Knoll is a New York corporation, wholly owned by Art Metal, Inc.,[1] manufactur-

---

1. Petitioner has manufacturing plants in New Jersey and Pennsylvania and show-room sales offices in various cities in the United States.

ing and selling furniture and furniture products throughout the United States; that firms, classified as designers and decorators by Knoll, actually were found to "buy and sell furniture in addition to their design service" from Knoll and other manufacturers, thus cross-competing with each other and with members of other classes; further that Knoll uses a 10% price differential among "customers" who agree to aggressively market Knoll's products and that resulting price discriminations had the requisite proscribed effect upon competition set forth in § 2(a) aforesaid. The examiner further found that, even though Knoll's favored customers received the highest discounts from other manufacturers, Knoll failed to establish a single instance of having met a competitor's price on any identified item of furniture with an equally low price and that Knoll gave its higher discount across the board on all items in its line to its favored customers. On the basis of these findings, he concluded that Knoll's pricing practices violate § 2(a) and are not within the allowed affirmative defense of § 2(b).

Nevertheless we are now required to take cognizance of petitioner's charge that the Commission improperly admitted into the record of this proceeding and relied heavily upon certain documents stolen for that purpose by said Prosser. It is alleged that these documents, as well as other evidence obtained for use by the Commission's counsel, were used in violation of the fourth amendment to the federal constitution. It is also urged that the Commission's counsel improperly intruded upon the privacy of the attorney-client relationship between petitioner and its counsel and upon its defense preparations. In these respects, it is insisted that petitioner's right to counsel was impaired and it was deprived of due process of law as guaranteed by the fifth amendment. In view of the result which we reach in this case, it is not necessary for us to consider this latter contention of petitioner.

1. Kathryn Sanders, a witness for Knoll, testified that on December 9, 1963 she was in the Knoll showroom in Birmingham, Michigan, which was run by Joseph Dworski, and saw Regional Manager Helm, Gary A. Beals,[2] and Prosser. Dworski came in and the four men went to lunch, and she was there when they returned from lunch. She stated that then Dworski, Beals and Helm left, but Prosser remained, and, when Rose, another employee, went to a late lunch, only she and Prosser were there; that she heard Prosser make a telephone call to a Mr. "Turiel or Turrell" at the Federal Trade Commission in Washington. Prosser's part in that conversation, as heard by the witness was as follows:

" 'This is Herbert Prosser,' * * * 'I worked with Knoll Associates in Michigan,' * * * 'I have been getting a raw deal.' * * * 'The runaround, something with Knoll's, and I wonder how you would like to have me testify on the Government's Behalf.' "

The witness added that

" * * * he did ask when the hearings were going to be in New York * * * and he said he was coming on a Christmas holiday to New York to see his family who lived there, and would be there, and would be able to testify there. * * * he was most upset, * * * but he said 'I have a lot of incriminating evidence,' or 'I have enough to hang Knoll,' * * * 'I have enough papers to hang them,' or something to that effect."

When Prosser was called as a witness for Knoll before the examiner, he testified, *inter alia*:

During December 1963 he was employed at the Knoll showroom in Birmingham, Michigan by Beals and Dworski.

The examiner ruled that Prosser could be examined by Knoll's counsel as a hostile witness. As such, Prosser then testified that he had attended several colleges. He was shown papers (marked Exhibits CX 1914–A through 1959–B). He denied

---

2. Beals understood he was to replace Dworski on January 1, 1964.

taking these papers from Knoll, but admitted taking them from Dworski, who, he said, was the agent for Knoll, and on January 5, 1964, he sent the papers via air express to the Federal Trade Commission in New York City, marked to the attention of Bernard Turiel, its attorney.

Prosser further testified that he communicated with Turiel on December 9, 1963 by phone from the office of Dworski in Birmingham. He admitted that he "may very well have" made another call to the Commission on December 10. He also admitted calling Turiel on December 10; that between that date and March 18, 1964, he spoke with Turiel, "on any number of occasions", concerning "these proceedings" between Knoll and the Commission. The subject matter of some of these conversations was "these documents" (CX 1914–A through 1959–B, which were lying in front of the witness).

On cross-examination by Mr. Turiel, the witness said that most of the telephone conversations between himself and Mr. Turiel took place after January, 1964.

When the examiner, at the suggestion of counsel for Knoll, asked if Mr. Turiel would take the stand to testify, Turiel said he was taking the position that he and Mr. Brod[3] refused to testify.

The hearing officer commented that he saw "no reason why an administrative agency should be allowed to circumvent the constitution if the courts themselves can't". He added:

"   *   *   *   the Federal Trade Commission has the broadest investigatory and subpoena powers of any agency in the Government."

During the argument before the hearing examiner, Turiel said that he believed that these documents came into the possession of Prosser in a lawful manner. The examiner responded that he assumed that "you are going to be able to demonstrate from the record to perhaps a reviewing court that the evidence will show that."

Turiel said:

"Well, I would like to say this so that the record is clear, counsel supporting the Complaint unequivocally deny that there were any requests, suggestion or invitation by anyone at the Federal Trade Commission—"

The hearing examiner responded:

"I cannot accept that or pay any attention to it. You were given full opportunity to take the stand to file a statement, to make a statement, and to assert that. As far as I am concerned, that statement doesn't exist. You were given ample opportunity. I was hoping that you would. I practically told you that you ought to make that statement if it were a true statement, and your superiors, and the higher wisdom in Washington decided that they were going to direct you, as I understand your position today and yesterday, they were going to direct you to remain silent."

and

"   *   *   *   It is your responsibility that justice is done."

The hearing examiner also stated to Turiel:

"There has been no accusation made except that you are the recipient of evidence or have offered evidence which was stolen from the files of Knoll Associates.

"Now, that is in writing in these papers. That is the only accusation that has been made."

■ 2. The action of the Commission in utilizing the fruits of the misconduct of Prosser violated rights of petitioner protected by the fourth amendment to the federal constitution. The undisputed evidence shows that Prosser stole the documents for the purpose of assisting the Commission counsel in the prosecution of the proceeding then pending, and the record shows that the Commission by its use of the documents knowingly gave its approval to Prosser's unlawful act. We agree with petitioner that the

3. Mr. Brod was also an attorney for the Commission.

use of the stolen documents renders the Commission's order unenforceable. That the evidence was taken and actually used for the purpose of aiding the Commission to enforce the Clayton Act does not justify the action. Gambino v. United States, 275 U.S. 310, 317, 48 S.Ct. 137, 72 L.Ed. 293 (1927). While *Gambino* involved a criminal prosecution, its holding would apply *a fortiori* to the proceeding involved in the case before us.

The purpose of the fourth amendment to the federal constitution and its attendant exclusionary rule has usually been expressed in its application to criminal prosecutions of individuals. Thus, in Fowler v. United States, 7 Cir., 62 F.2d 656, at 657 (1932) citing Byars v. United States, 273 U.S. 28, 33–34, 47 S.Ct. 248, 71 L.Ed. 520 (1927), we quoted:

> " 'The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law, is not to be impaired by judicial sanction of equivocal methods, which, regarded superficially may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right."

While there we dealt with a prohibition act prosecution, the purpose of that amendment and the exclusionary rule we must now view in the context of the proceeding here presented, viz., a quasi-judicial regulatory proceeding.

In view of its purpose, we must realistically examine the fourth amendment and the facts of this case in terms of the security to be afforded to "people to be secure in their persons, houses, papers and effects". We must not be misled by the legal classification of the nature of the proceeding. The Supreme Court has held that the fourth amendment is applicable (with certain exceptions, not relevant here), to corporations, whether the proceeding is criminal or, in substance and effect, quasi-criminal, and whether the proceeding is before a court or an administrative agency. Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Silverthorn Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920); and Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696 (1924).

Nothing stated by the Supreme Court in Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) even remotely suggests deviation from the principle that a commercial enterprise shall be protected the same as an individual person from an untrammeled exercise of authority in the name of the government. *Walling,* cited by the Commission, was concerned with the right of the administrator of the Fair Labor Standards Act, 52 Stat. 1060, to judicial enforcement of a subpoena duces tecum issued by him in an investigation pursuant to § 11(a) of that act. However, the court held that the use of a subpoena duces tecum to produce relevant documents was not a violation of the fourth amendment. The case is inapplicable here.

■ The Commission also cites Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). However, it is significant that the court said at 530, 87 S.Ct. at 1731:

> "But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely 'peripheral.' "

And at 532, 87 S.Ct. at 1732 it said:

> "In our opinion, these arguments unduly discount the purposes behind the warrant machinery contemplated by the Fourth Amendment."

and at 533–534, 87 S.Ct. at 1733 the court added:

> "It has nowhere been urged that fire, health, and housing code inspection programs could not achieve their goals within the confines of a reasonable search warrant requirement. Thus, we do not find the public need argument dispositive.

"In summary, we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, * * *."

The protection thus afforded by the fourth amendment against such administrative searches was extended to business premises by See v. City of Seattle, 387 U.S. 541, 546, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

"Contrary suggestions or implications may be explained as dicta; or by virtue of *the presence of an actual illegal search and seizure*, the effects of which the Government sought later to overcome * * * odious in both English and American history." Walling, supra, 327 U.S. 206–207, 66 S.Ct. at 504. (Emphasis supplied.)

In the case at bar, it is clear that Knoll's property rights are to be "preserved sacred * * * in all instances where * * * not * * * taken away or abridged by some public law for the good of the whole." Boyd, supra, 116 U.S. 627, 6 S.Ct. 530. With respect to corporate documents and papers "cases where this right of property is set aside by positive [4] law are various." Boyd, supra, 627, 6 S.Ct. 530. See Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Walling, supra; and City of Seattle, supra. However, the basic principle of *Boyd* still applies today. As Mr. Justice Holmes stated in American Tobacco Co., ante page 534, 264 U.S. at 305–306, 44 S.Ct. at 337:

"Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire * * *."

Thus, where, as in the case at bar, there is undenied evidence of a theft of corporate documents on behalf of the government for use in a then pending proceeding against the corporate owner of what was stolen, such theft and the use thereof by the government, is as stated in Boyd, supra, 116 U.S. at 635, 6 S.Ct. at 534:

"* * * the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment. Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence and effects their substantial purpose. * * * illegitimate and unconstitutional, practices * * * can only be obviated by adhering to the rule that constitutional provisons for the security of person and *property* should be liberally construed. * * *" (Emphasis supplied.)

Accordingly, we hold that on facts appearing in the record before us, the fourth amendment is applicable here.

3. There can be no doubt that the information and assistance Prosser supplied, whatever his motive, affected the entire proceedings against Knoll.[5] The

---

4. "Distresses, executions, forfeitures, taxes, &c., * * *." Boyd, supra, 627, 6 S.Ct. 524.

5. The Commission's reliance upon United States v. American Radiator & Standard Sanitary Corp., D.C., 278 F.Supp. 241 (1967) cited in oral argument, is misplaced. Actually the court's *holding* there, relying upon United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed. 2d 510 (1966), buttressed Knoll's motion for suppression of the evidence and its fruits at the hearing on the issues. The Commission also cites Burdeau v. Mc-

Dowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) in support of its contention that *no constitutional right of* Knoll was violated by Prosser's taking of the documents belonging to Knoll, his employer, and making them available to the representatives of the Federal Trade Commission. However, the facts in *Burdeau* are clearly different from those in the case at bar. In fact the court said at 475, 41 S.Ct. 574 that the record clearly showed that no official of the government had anything to do with the seizure of petitioner's property or any

gravamen of § 2(a)—discrimination in price between different purchasers of commodities of like grade and quality * * * where the effect of such discrimination may be substantially to lessen competition—was attempted to be established by the Commission's knowing use of documents unlawfully obtained by Prosser. Thus, the Commission in its opinion stated that the trial examiner

> " * * * found that there is substantial cross-competition between the various classes of respondent's retail sellers, i. e., (a) architects vis-a-vis architects, interior designers, and retail stores; (b) interior designers vis-a-vis interior designers, architects and retail stores; and (c) retail stores vis-a-vis retail furniture stores, architects, and interior designers."

The Commission was of the opinion, emphasized by it in its brief at p. 56, that—

> " * * * probably the clearest additional proof that petitioner's present contention [that designers are not purchasers] is contrary to plain fact is a document *from its own records* * * * headed 'Customer Classifications,' * * *." (Emphasis supplied.)

Prosser's purloined documents and the evidence based thereon thus are shown to furnish directly the supposed support for the Commission's order against Knoll.

Accordingly, we hold on the facts before us that the Commission's knowing acceptance and use against Knoll of documents and information unlawfully obtained by Prosser from Knoll violated the fourth amendment to the federal constitution.

■ 4. We have also considered the Commission's argument that the federal courts lack supervisory power over federal administrative proceedings. We find it inapplicable here. We hold that we have not only the power but the duty to apply constitutional restraints when pertinent to any proceeding of which we have jurisdiction, such as a statutory review of a federal commission decision. At stake here is the ordered concept of liberty of which Mr. Justice Holmes spoke in his dissenting opinion in Olmstead v. United States, 277 U.S. 438, 469, 48 S.Ct. 564, 72 L.Ed. 944 (1928):

> " * * * apart from the Constitution the government ought not to use evidence obtained and only obtainable by a criminal act. * * * "

In the same case, Mr. Justice Brandeis, likewise dissenting, said at 479, 48 S.Ct. at 572:

> "Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent. * * * The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding."

And, at 485, 48 S.Ct., at 575, Mr. Justice Brandeis added:

> "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

---

knowledge thereof until months after it had been taken from him and it was therefore manifest that whatever wrong was done was the act of individuals taking the property of another. In contrast, in the case at bar, Prosser, the disloyal employee, furnished to Bernard Turiel by telephone information, which established the connection between the Commission and Knoll, resulting in Prosser's testifying as a Commission witness against Knoll. The facts in this case are the antithesis of those in *Burdeau*.

This principle, thus announced in dissenting opinions, has since been recognized by the Supreme Court as presently the law of the land. Elkins v. United States, 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

The record before us reveals that those who represented the Commission knew that Prosser had stolen from the office of Dworski, a sales representative of Knoll, various documents, which he turned over to representatives of the Commission, for use in this proceeding, and that they were so used.

Hence the order of the Commission issued on August 2, 1966 is set aside and this cause is remanded to the Commission for reconsideration on the record of the proceedings heretofore made and filed herein, excepting therefrom, however, all evidence and testimony given or produced by or through the witness Herbert Prosser.

Order set aside and cause remanded with instructions.

CUMMINGS, Circuit Judge (concurring).

According to my reading of the record, the Commission and the trial examiner considered the Prosser evidence only in connection with the defense of meeting competition under Section 2(b) of the Clayton Act, as amended (15 U.S.C. § 13(b)). Commissioner Elman's dissenting opinion opposed the entry of an order, possibly reflecting the view that the Prosser evidence permeated even the consideration of the Section 2(a) issues. If the Commission should decide to proceed with this case on remand, the Prosser evidence must be completely disregarded. Even though the Commission's conclusion under Section 2(a) appears to be supported by substantial independent evidence, it would be fairer for the Commission to pass upon both the Section 2(a) and Section (b) questions without any Prosser evidence in the record (assuming that there is reconsideration by the Commission). Therefore, I join in the judgment remanding the entire case to the Commission.