**FEDERAL TRADE COMMISSION**

v.

**Richard M. PAGE, President, and Arrow Food Distributors, Inc., a corporation, et al.**

**Civ. A. No. 19051.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 26, 1974.

Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Robert E. Duncan, Fed.Trade Com'n, Washington, D. C., for plaintiff.

Ellis Arnall and Allen I. Hirsch, Arnall, Golden & Gregory, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a petition brought by the Federal Trade Commission (hereinafter, the "FTC", or the "Commission"), for an order requiring respondents to appear and produce documentary evidence in an FTC adjudicative hearing pursuant to certain subpoenas *duces tecum* issued by the FTC. The subject matter jurisdiction of this court is grounded upon Section 9 of the Federal Trade Commission Act (hereinafter, the "FTCA"), 15 U.S. C. § 49, which authorizes the FTC to issue subpoenas *ad testificandum* and *duces tecum* in connection with any matter under investigation by the FTC, and provides that a federal district court may, in the event of default, compel compliance therewith. Respondents have moved to dismiss the petition, or alternatively, for an order compelling discovery as against the FTC. Petitioner has responded by moving for a protective order against such discovery.

On February 27, 1974, this court denied two of respondent's objections to the instant subpoenas but requested additional briefs regarding the applicability of the Fourth Amendment's prohibition against unreasonable searches and seizures to the present proceedings. Specifically, the court wanted to consider (1) the traditional use of federal courts as forums in which to raise Fourth Amendment objections to administrative subpoenas and (2) the impact of the recent case of United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) upon that use. After careful consideration of these issues, the court has concluded that the petition should not be granted at this time and that respondents are entitled to discovery from the FTC.

Before proceeding to the merits of the present dispute, it may be helpful to recapitulate the procedural setting from which it has arisen. Section 5 of the FTCA, 15 U.S.C. § 45, declares unlawful unfair methods of competition and unfair or deceptive acts or practices in commerce, and provides that whenever the FTC suspects that a party may be engaged in such behavior, it shall issue a complaint stating the charges and requiring the party to appear at an adjudicative hearing. The purpose of such a hearing is to determine whether or not the FTC shall issue a cease and desist order restraining the party from committing such unlawful acts in the future. Pursuant to § 3.34 of the FTC Rules of Practice, 16 CFR 3.34, both sides are en-

titled to apply for subpoenas *ad testificandum* and *duces tecum* to the Administrative Law Judge. In June of 1972, the FTC initiated, pursuant to § 5 of the FTCA, 15 U.S.C. § 45, an administrative proceeding entitled In the Matter of Frozen Food Forum, Inc., et al., Docket No. 8890, by filing a complaint against various distributors of grocery products. The complaint alleged that the corporate respondents herein, and others, had engaged and were engaging in illegal pricing, price discrimination, and payment or receipt of unlawful brokerage fees, in violation of § 2 of the Clayton Act, 15 U.S.C. § 13, and § 5 of the FTCA. Specifically, it alleged that corporate respondent Frozen Food Forum, Inc. (hereinafter, "FFF") a grocery products distributor to institutions owned by 72 stockholder-members, contracted with suppliers to package grocery products under. its own labels for sale by the suppliers to FFF's stockholder-members. It further alleged that corporate respondents Winton Sales Company, Carper Sales Company, and at one time Stewart-Tucker, Inc. (not a respondent herein), acted as brokers for FFF by purchasing grocery products on FFF's behalf and received brokerage fees from suppliers in excess of actual services rendered, in violation of § 2(c) of the Clayton Act. The complaint also alleged that FFF and its stockholder-members violated § 2(c) by receiving valuable brokerage services from its brokers without paying for such services, despite the fact that the brokers received compensation as such from suppliers.

On February 6, 1973, the FTC caused subpoenas *duces tecum* to be issued to Julius Levitt, individually and in his capacity as a corporate officer of FFF; to the corporate officers of FFF's alleged brokers, Carper Sales Company and Winton Sales Company; and to the corporate officers of four of FFF's stockholder-members, Arrow Food Distributors, Inc., Hardin's, Inc., Capitol Fish Company, and Bob Blanke Sales Company, Inc. The subpoena issued to FFF requests the production of material relating to acquisition and distribution of grocery products. The subpoenas issued to the four stockholder-members of FFF requests material relating to the relationships between the stockholder-member, FFF, and the three named brokers. The subpoenas issued to the brokers request material relating to their orders of grocery products for FFF from certain suppliers.

On February 20, 1973, respondents moved to quash the subpoenas. The motions were subsequently denied by the Administrative Law Judge one month later. In dismissing the motions to quash, the Administrative Law Judge ordered respondents to appear before him in Atlanta, Georgia, on April 3, 1973. Each respondent thereupon filed an affidavit stating his intention not to appear on April 3 in compliance with the subpoena. No proceedings were convened on April 3, and on April 16, government counsel filed a request for enforcement of the subpoenas with the Administrative Law Judge. Respondents were found in default for failure to comply with the subpoenas, and the matter was certified to the FTC for enforcement. The present proceedings were brought pursuant to this alleged default and certification.

Respondents have refused to comply with the present subpoenas on the grounds that they are the product of a prior illegal seizure of FFF's corporate records in August of 1968. Respondents contend that enforcement of the subpoenas would give judicial sanction to the FTC's prior unlawful actions, and request the invocation of the "exclusionary rule" to deny the present petition.

The history of the FTC's allegedly unlawful acquisition of FFF's corporate records commenced in July of 1968, when the FTC caused investigatory subpoenas *duces tecum* to be issued to Julius Levitt (individually and as an officer of FFF), to Ms. Joyce Alexander (individually and as an employee of FFF), and to George T. Stewart (of Stewart-Tucker, Inc., FFF's alleged bro-

ker). As in the present case, the government suspected FFF of violating Section 2 of the Clayton Act and Section 5 of the FTCA, but unlike the present case, it had yet to issue a formal complaint. Respondents made timely motions to quash the subpoenas.

Ms. Alexander's subpoena required her appearance before an FTC hearing examiner in Atlanta, Georgia, on August 14, 1968. The motion to quash had not been decided by that date, however. Ms. Alexander was unable to appear because of an illness in her family, but her counsel nevertheless requested a ruling on the pending motion to quash. The hearing examiner ruled that in the absence of a definitive FTC ruling on the motion, the subpoena was still in force. Corporate records of FFF requested by Ms. Alexander's subpoena were then tendered, under protest of counsel, by a Mr. Herbert Oliver. Mr. Oliver, an employee of FFF, testified in Ms. Alexander's stead regarding the tendered records, subject to her later confirmation.

On the following day, August 15, counsel for respondents received word by telephone that the FTC had denied their motions to quash, and several days later received in the mail what purported to be an order denying the motions. Counsel for respondents contended then, as they do today, that the order was invalid because it was not properly signed by the Secretary of the Federal Trade Commission. Further attempts by the FTC to secure compliance on the subpoenas were not successful, and proceedings to compel enforcement were brought in federal court.

During the course of proceedings before the Hon. Sidney O. Smith, U. S. District Court for the Northern District of Georgia, the FTC was ordered to return the papers and allow the respondents a limited opportunity to depose FTC officials regarding the allegedly invalid order denying the motion to quash. See, FTC v. Kujawaski et al., 298 F. Supp. 1288 (N.D.Ga.1969). Upon the FTC's subsequent motion to dismiss and over the objections of respondents' counsel, the court dismissed the enforcement proceedings on August 6, 1969. Identical subpoenas duces tecum were issued to Julius Levitt and Joyce Alexander the following day, on August 7. Again, the respondents moved to quash. This time, the motion was denied before respondents were required to testify, but respondents still refused to do so and were held in default. No further action was taken by the FTC to enforce this second set of subpoenas.

If the purpose of today's proceedings were to enforce the identical subpoenas served upon respondents in July of 1968 (and again in August of 1969), then the court would not hesitate in granting the present petitions, regardless of whether the Commission had previously obtained FFF's corporate records in an illegal fashion. This conclusion would necessarily follow from the lack of any connection between the FTC's alleged prior unlawful behavior and the present subpoenas. But respondents assert the existence of such a connection in the present case. Although Judge Smith eventually ordered the Commission to return FFF's records, respondents contend that while the records were in the Commission's possession, they were closely studied and analyzed, and that the information gleaned therefrom was used to draft the present subpoenas. For its part, the Commission has not denied the existence of a link between the drafting of present subpoenas and its analysis of the previously obtained corporate records. Respondents infer unlawfulness from the FTC's failure to rule on the motions to quash the July, 1968, subpoenas before the date of their return, and from the FTC's subsequent issuance of an allegedly invalid order denying the motions to quash. It is therefore urged that if the records had been obtained unlawfully, then any information produced by the present subpoenas would necessarily be tainted as the fruit of a poisonous tree.

Respondents base their Fourth Amendment argument upon Silverthorne

Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), in which the Supreme Court reversed a district court's judgment of contempt which had imposed a fine on a corporation and had imprisoned one of its officers. In that case, federal officers, after arresting Silverthorne and his father pursuant to an indictment, had unlawfully searched the offices of the Silverthorne Lumber Co. and seized certain documents. A new indictment was then handed down. The district court held the search unconstitutional and ordered the papers returned, but subpoenas were served on Silverthorne and the corporation requiring the production of the originals. The respondents refused to comply and were held in contempt. The Supreme Court reversed on the grounds that the subpoenas were drafted with the assistance of information gleaned from evidence seized in violation of the Fourth Amendment. As stated by the Court:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that it shall not be used at all.

251 U.S. at 392, 40 S.Ct. at 183. Although *Silverthorne* clearly stands for the proposition that Fourth Amendment objections may be raised in proceedings other than criminal trials (such as proceedings to enforce subpoenas *duces tecum*), it did not address the issue of whether such objections may be raised where the evidence is destined for ultimate use in an administrative, rather than a criminal proceeding.

This question was considered in Knoll Associates, Inc. v. F. T. C., 397 F.2d 530 (7th Cir. 1968), wherein the Seventh Circuit set aside a cease and desist order issued by the FTC which was in part based upon evidence stolen by a former employee of Knoll Associates, Inc., for the purpose of assisting the FTC in its administrative prosecution of that company. The Commission unsuccessfully urged affirmance of its order on the grounds that Fourth Amendment objections could not be asserted by a corporation in its appeal of an administrative adjudication. The Court of Appeals rejected both the proposition that Fourth Amendment rights did not obtain in an administrative adjudicatory proceeding, as well as the proposition that a corporation had no standing to assert such rights therein. The Court reasoned that the purpose of the Fourth Amendment—that is, deterrence of governmental lawlessness—would be served by application of the exclusionary rule regardless of the criminal or administrative nature of the proceedings involved, and regardless of the personal or corporate nature of the party aggrieved by the unlawful seizure.

*Knoll* may be distinguished from the present case because it arose from a direct appeal of the Commission's final cease and desist order, rather than from an interlocutory attack upon the evidence's admissibility. Petitioner therefore suggests that respondents' Fourth Amendment objections are premature, in that they could raise such objections before the Court of Appeals in their appeal of any cease and desist order issued by the Commission. Such an argument appears to be in direct opposition to *Silverthorne,* wherein the Supreme Court, by overturning a contempt citation for refusal to comply with subpoenas issued in a criminal action, thereby refused to validate even a preliminary judicial validation of subpoenas tainted by an unlawful search and seizure. Further, the respondent in *Knoll* had been prevented from making an interlocutory attack upon the tainted evidence in federal district court because it had not been obtained through normal discovery procedures, but through theft. Therefore, the respondent therein could raise its Fourth Amendment objections only by attacking the cease and desist order. Such is not the case here, as the respondents have at their disposal a federal district court forum in which to raise objections to subpoenas, by virtue of Section 9 of the FTCA.

■ As it is clear that Fourth Amendment objections may be raised in these proceedings, the court now turns to a consideration of the recent Supreme Court decision of United States v. Calandra, *supra*. In that case, Calandra, who had previously been granted transactional immunity, had been called as a witness before a grand jury investigating loan-sharking activities. While testifying before the grand jury, Calandra objected to answering certain questions propounded to him on the grounds that they related to his involvement with evidence illegally seized from him by federal agents, and moved the district court to suppress and return such evidence. The district court thereupon determined that the evidence had been illegally seized and granted Calandra's motion. The Supreme Court reversed on the grounds that application of the exclusionary rule to the facts of that case would seriously interrupt and interfere with the grand jury's historically sanctioned investigatory and accusatory functions. As stated by the Court:

> Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues * * * only tangentially related to the grand jury's primary objective. [footnote omitted]. The probable result would be "protracted interruption of grand jury proceedings," Gelbard v. United States, 408 U.S. 41, 70, 92 S.Ct. 2357, 2372, 33 L.Ed.2d 179 1972) (White, J., concurring), effectively transforming them into preliminary trials on the merits.

414 U.S. at 349, 94 S.Ct. at 620–21, 38 L. Ed.2d at 572. The Court distinguished *Silverthorne* on the grounds that an indictment had already been handed down by a grand jury. Thus, the purpose of the subpoenas in that action was to gather evidence to be introduced at a trial designed to determine the defendants' guilt or innocence, and not at a grand jury to determine whether an indictment should be handed down. As stated by the *Calandra* Court, ". . . the primary consequence of the Court's decision [in *Silverthorne*] was to exclude the evidence from the subsequent criminal trial." 414 U.S. at 352, 94 S.Ct. at 622, 38 L.Ed.2d at 574, fn. 8. Therefore, *Calandra* may be interpreted as recognizing an investigative exception to the exclusionary rule: that is, the Fourth Amendment may not be used to prevent investigative institutions from determining whether there is cause to believe that violations of the law have occurred.[1]

In light of the above, it is clear to this court that *Calandra's* exception to *Silverthorne* does not apply to the present action. It is undisputed that the present subpoenas *duces tecum* were issued in the course of an adjudicative proceeding, in that a formal complaint (comparable to an indictment drawn by a grand jury) has already been issued. The primary consequence of a denial of the present petition will be to exclude the evidence sought thereby from consideration in an adjudicative proceeding designed to determine whether respondents' behavior warrants issuance of a cease and desist order. No investigative proceedings will be interrupted by consideration of respondents' Fourth Amendment arguments at this point.

■ Although respondents have not alleged an illegal search and seizure in the sense of an actual physical entry onto respondents' property, we feel that the combination of the Commission's

---

1. The distinction between adjudicative and investigative proceedings was clearly recognized in F. T. C. v. Kujawaski, *supra*, wherein Judge Smith implicitly acknowledged that an investigative subpoena may be entitled to some judicial deference. The Court found ". . . a definite tension between the need to allow administrative agencies to investigate matters fully without undue hindrance in the federal courts and a need to allow the investigated party some recourse at this early stage [that is, a Section 9 federal district court hearing] to check any abuses by that agency." 298 F.Supp. at 1290. The Court therefore allowed the respondents a limited opportunity to undertake discovery to determine if the subpoenas were procedurally valid.

**1058**

failure to rule on respondents' motions to quash the July, 1968, subpoenas before their date of return, with the subsequent issuance of a possibly invalid order denying the motions to quash, raises the inference that the Commission may have intentionally perverted the legal discovery processes available to it in order to obtain and examine FFF's corporate records pending respondents' attempts to secure their return. Although it is unclear at this point whether or not the Commission's behavior in 1968 was so egregious as to taint the present subpoenas, we feel that respondents are entitled to conduct discovery against various FTC officials on this question, and hereby allow respondents ninety days from the date of this order in which to do so.

Accordingly, the court hereby defers any ruling on the instant petition until such time as discovery has been completed. The Commission's motion for a protective order is denied.

It is so ordered.