**Cleanoy CARSON, Plaintiff,**

v.

**William F. BOLGER, etc., et al., Defendants.**

**No. 78–626C(2).**

United States District Court,
E. D. Missouri, E. D.

March 5, 1981.

Doris Gregory Black, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, District Judge.

This case is now before the Court for decision upon the merits. Plaintiff filed this suit pursuant to 42 U.S.C. § 2000e–16,[1] alleging that his discharge by defendants was motivated by racial considerations.

This case was tried before the Court sitting without a jury. This Court, having considered the pleadings, the testimony of the witnesses, and the documents in evidence, and being fully advised in the premises, hereby makes the following Findings of Fact and Conclusions of Law, as required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff is a black male citizen of the United States and a resident of St. Louis County, Missouri. He was employed as a mailhandler at the United States Postal Service's main St. Louis office from April 2, 1973 until his termination on March 7, 1977. Prior to the incidents which ultimately led to his suspension his employment record with the Postal Service was not particularly noteworthy. In late 1974, he had received a suspension for engaging in an altercation

---

1. Plaintiff also asserted a claim under 42 U.S.C. § 1981. This claim was dismissed by Order of Court on October 30, 1978.

with an on-duty employee. Otherwise, no significant incidents were reflected in his past record.

On January 29, 1977, plaintiff was working the night shift, from 10:30 p. m. until 7:00 a. m. Early in the shift, he was told by his supervisor, Harry Corbett, to go from his first floor station to the ground floor and report to Supervisor Mary O'Neal. Later that shift, around 4:00 a. m., Corbett requested of O'Neal that she send plaintiff and another worker, Doris Williams, back to Corbett's department on the first floor. These workers were told to report to Corbett's department after their break, which was scheduled to end at 4:30 a. m.

Plaintiff was approximately ten minutes late in reporting to the first floor. Upon arriving there, he was questioned by O'Neal, who was then on the first floor, as to why he was late. Rather than explaining the reasons for his tardiness, plaintiff became loud and abrasive and questioned O'Neal's motivation for questioning him. He questioned as to why she was "always messing with" him. He also questioned her as to why Williams had not been similarly treated.[2]

Corbett was nearby and interceded to determine the cause of the problems. Plaintiff then immediately castigated him also, loudly using vulgar and profane language. When cautioned by Corbett that such language and tone of voice should not be used when talking with a supervisor, plaintiff responded that he would use any language he wished. Corbett then said he wished to talk to plaintiff in the supervisor's office.

In the supervisor's office, plaintiff continued to use vulgar and profane language and continued to accuse Corbett of singling him out for special treatment. In vulgar language and a loud tone of voice, plaintiff continually accused Corbett of always picking on him. In point of fact, this was the first time Corbett had occasion to discipline plaintiff, although Corbett had been his supervisor for a number of months.

Corbett remained calm throughout these proceedings. After pointing out to plaintiff that his conduct was in violation of the rules governing employee conduct, Corbett advised plaintiff that he would check into plaintiff's prior disciplinary history and determine the appropriate discipline accordingly. This check advised Corbett of plaintiff's previous suspension for fighting. Corbett subsequently decided to suspend plaintiff for seven days for the incident of January 29, 1977.

On February 2, 1977, towards the end of the shift, Corbett summoned plaintiff to the supervisor's office to inform him of the suspension. Prior to plaintiff's arrival, Corbett asked another supervisor, Loretta Elfrink, to remain in the outer office in case there was any problem. Corbett was apprehensive due to plaintiff's behavior on January 29 and his prior suspension for fighting.

When plaintiff arrived, Corbett handed him the notice of suspension and requested that plaintiff read it and then sign it, acknowledging receipt. Plaintiff requested the presence of his union representative, but the collective bargaining agreement did not require the presence of a union representative, so Corbett denied this request. Plaintiff was angry and refused to sign the notice. He got out of his seat and moved toward the door which led to the outer office, intending to close it. Corbett told plaintiff to leave the door open, and plaintiff then turned back toward Corbett. Plaintiff was very angry and had his fists clenched. He approached Corbett and in profane and vulgar language threatened Corbett. He also directed a vulgar epithet at Corbett.

Corbett stated that he considered plaintiff's words and actions a threat to his personal safety. Plaintiff responded that he would deny Corbett's version of the events. Corbett then called Elfrink into the room. Corbett explained to her what

---

2. Though this Court does not believe it is particularly relevant to this case, Williams was, in fact, subsequently counseled for her tardiness.

had happened and plaintiff denied the allegations. Corbett remained calm throughout these events. When plaintiff continued to refuse to sign the notice of suspension, Elfrink signed in his stead.

Shortly thereafter, Corbett placed plaintiff on indefinite suspension pending determination of appropriate discipline. Plaintiff was subsequently escorted from the premises by the security guards. This suspension was later converted to a discharge, effective March 7, 1977. Plaintiff filed timely charges of discrimination with the Equal Employment Opportunity office of the Postal Service and brought this suit within thirty days of the receipt of his Right to Sue letter.

No pattern of discriminatory discipline on the part of Corbett was established by plaintiff. Though the evidence showed him to be a tough and demanding supervisor, there was no evidence that this attitude pertained only to blacks. On the contrary, the evidence showed that he was this way with all of his subordinates.

Plaintiff could point to no other instances of comparable employee conduct. Though Corbett had disagreements with other employees, none of these incidents involved vulgarity, profanity or threats of physical harm.

Plaintiff was discharged solely due to his behavior on February 2. Race played no part in the decision to terminate him.

### CONCLUSIONS OF LAW

This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e–16.

Plaintiff has failed to prove that race played any part in the decision to discharge him. To the extent that he claims that he was qualified for his position and that there was no justification for his discharge, this Court credits defendant's version of the events in question and defendants have, therefore, clearly articulated a legitimate, non-discriminatory justification for the discharge. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Plaintiff has failed to show that this justification was, in fact, a pretext for discrimination.

The evidence offered by plaintiff on this point was either non-existent or of little weight. Plaintiff's own witnesses testified that they had not considered Corbett's discipline of other employees to be racially motivated. They admitted that he was strict with both whites and blacks. The statistics offered by plaintiff were of too small a sample to be of any probative value. *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409 (8th Cir. 1975); *Eubanks v. Pickens-Bond Construction Co.*, 635 F.2d 1341, (8th Cir. December 5, 1980).

Likewise, plaintiff has failed to show that he was treated differently than whites who committed similar infractions. Cf. *Mosley v. General Motors Corporation*, 497 F.Supp. 583 (E.D.Mo.1980). He could show no comparable conduct by others. Judgment will therefore be entered for defendants.