Evelyn **FALKOWSKI**, Appellant,

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.**

No. 82-1446.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 13, 1982.
Decided Oct. 14, 1983.

John D. Grad, Alexandria, Va., with whom Owen E. Perry, Troy, Mich., was on the brief, for appellant.

R. Lawrence Dessem, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Barbara L. Herwig, Atty., Dept. of Justice, and Vella M. Fink, Atty., E.E.O.C., Washington, D.C., were on the brief, for appellees.

Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellees.

Before ROBINSON, Chief Judge, WILKEY, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

This appeal is from the District Court's grant of summary judgment against plaintiff Evelyn Falkowski, a high-level career employee of the Equal Employment Opportunity Commission (EEOC or Commission). In her complaint, Ms. Falkowski sought a judgment against the Commission and the Department of Justice (DOJ or Department) compelling them to reimburse her for past legal expenses and to provide future legal representation in two lawsuits brought against her by a subordinate during her tenure as director of EEOC's district office in Birmingham, Alabama. Plaintiff alleges that the defendant government agencies have denied her reimbursement and representation in these suits either for discriminatory and retaliatory mo-

tives in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1976 & Supp. V 1981), or through arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976).

After Ms. Falkowski filed her complaint in District Court, the defendant government agencies moved in the alternative for dismissal or summary judgment. Although it found that the complaint stated valid causes of action under Title VII and the APA, the District Court nonetheless granted defendants' motion for summary judgment. *See Falkowski v. EEOC,* No. 81–1776 (D.D.C. Mar. 4, 1982). Plaintiff thereafter filed this appeal challenging the District Court's grant of summary judgment on three of her causes of action. We affirm the District Court's judgment as to plaintiff's first cause of action, but reverse as to the second and third because genuine issues of material fact relevant to those claims remain in the case.

## I

The history of Ms. Falkowski's struggles with the EEOC stretches back to 1973 and encompasses an intervening volume of courtroom litigation and agency proceedings that for sheer sinuosity falls nothing short of Kafkaesque. Fortunately for purposes of the present opinion, we need recount only a portion of the various judicial and administrative antecedents to the case now before us.

### A. *The Background Litigation for Which Plaintiff Seeks Government Representation and Reimbursement*

Ms. Falkowski began her career with the EEOC in 1967 and by 1971 had become head of the Commission's newly formed office in Jackson, Mississippi. At the time, she was one of the few women professionals employed by EEOC in its southeastern region. After two years in the Jackson office, Ms.

Falkowski sought a transfer to the Birmingham district office for both personal and professional reasons. When repeated attempts to procure her transfer failed, she brought suit against the EEOC alleging sexual discrimination as the motive for the agency's inaction. The matter was settled in apparently amicable fashion in the fall of 1974 when the Commission agreed to appoint Ms. Falkowski director of the Birmingham office. *See Falkowski v. Powell,* No. 73–P–1009–S (N.D.Ala. Sept. 9, 1974) (consent decree).

### 1. *The* Perry v. Golub *Litigation*

Following Ms. Falkowski's arrival in the Birmingham office, a series of disputes broke out between her and a number of her subordinates, but principally with the office's deputy director, Bertram Perry. On his side, Mr. Perry alleged that the friction stemmed from his justified protests against mismanagement by Ms. Falkowski; in particular, he pointed to a series of procedural irregularities purportedly reflecting overzealousness and bias on her part in favor of plaintiffs in certain Title VII actions. *See Perry v. Golub,* 400 F.Supp. 409, 411–12 (N.D.Ala.1975), *vacated as moot,* 594 F.2d 862 (5th Cir.1979). On her side, Ms. Falkowski contended that the conflict arose from her attempts to discipline rank insubordination and oppressive behavior against office personnel by Mr. Perry. *See* Brief for Appellant at 8.[1]

As the conflict deepened, both parties began to seek support for their respective positions from superiors in the Atlanta regional office. A series of investigations ensued that resulted in EEOC's decision, first to suspend Ms. Falkowski's authority as district director, and then to transfer both parties out of the Birmingham office. Ms. Falkowski immediately presented a pleading in federal district court challeng-

---

**1.** This court expresses no opinion on the merits of these contentions and notes that apparently no other court or agency has ever ruled definitively on them either. *See* Perry v. Falkowski,

No. 78–PT–0935–S, slip op. at 2 (N.D.Ala. Apr. 17, 1981) (unpublished opinion granting plaintiff's motion for voluntary dismissal).

ing her transfer as a violation of the 1974 consent decree.[2]

Mr. Perry likewise brought suit in federal district court to enjoin his own transfer out of Birmingham. His complaint named Ms. Falkowski and two other superiors, Messrs. Golub and Hollowell, as defendants. *See Perry v. Golub,* 400 F.Supp. 409 (N.D.Ala. 1975), *vacated as moot,* 594 F.2d 862 (5th Cir.1979). Alleging that the transfer violated his first amendment and other civil rights, Mr. Perry accused his EEOC superiors of attempting to silence his protests as a "whistle-blower" and of discriminating against him on account of his race, which is black. These steps marked the beginning of the *Perry v. Golub* litigation, the first of the two suits for which plaintiff-appellant today seeks reimbursement and representation from the government in this court.

On August 29, 1975, the United States District Court for the Northern District of Alabama acted on Mr. Perry's complaint. A hearing was held in which EEOC attorneys appeared on behalf of all three defendants, including Ms. Falkowski, and in which private counsel for Ms. Falkowski was also present. At the hearing's conclusion, the district judge granted Mr. Perry's motion for a preliminary injunction barring his transfer from the Birmingham office. Under an informal agreement with the EEOC, Ms. Falkowski was allowed to "tag along" on this injunction, thus suspending her transfer as well. As a result of this agreement, the district court agreed to take no action on Ms. Falkowski's separate pleading for relief under the earlier 1974 consent decree.[3]

The next relevant action in *Perry v. Golub* came in November 1976 when the district court granted Mr. Perry's motion to drop Ms. Falkowski as a defendant in the action. At roughly the same time, the court also acted to dissolve its preliminary injunction on grounds that efforts to remove Mr. Perry from his post were no longer afoot. Ms. Falkowski thereafter appealed her dismissal from the case, contending that EEOC attorneys had inadequately defended her in the 1975 preliminary-injunction hearing, and that she wished to remain in the action to clear her name. The United States Court of Appeals for the Fifth Circuit affirmed the district court's dissolution of the injunction on grounds of mootness,[4] and in an apparent nod to Ms. Falkowski vacated the underlying proceedings "so as to spawn no consequences." *Perry v. Golub,* 594 F.2d 862 (5th Cir.1979) (No. 77–1719) (unpublished opinion).[5]

---

**2.** Just prior to making this pleading, Ms. Falkowski had filed two administrative charges of employment discrimination against EEOC. In these charges, she alleged that the agency was undermining her authority in retaliation for her earlier suit against the Commission and because her predominantly black male superiors in Atlanta did not wish to see a white female in the Birmingham district-director post. *See* Appendix at 162–63 (reproducing charges of July 9, 1975, and August 15, 1975).

**3.** See Falkowski v. Perry, No. 76–G–0545–S, slip op. at 3 (N.D.Ala. Feb. 13, 1981) (unpublished opinion granting in part plaintiff's petition for costs and attorneys' fees), *aff'd,* 691 F.2d 510 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).

**4.** The Fifth Circuit apparently mistook Ms. Falkowski's appeal of her dismissal from the case as an appeal of the district court's decision to dissolve the injunction. *See* Perry v. Golub, 25 Empl.Prac.Dec. (CCH) ¶ 31,488, at 18,936–38 (N.D.Ala.1980) (noting on remand that the appellate court confused the issues before it on appeal), *vacated and remanded,* 691 F.2d 510 (11th Cir.1982). Once rendered, however, the Fifth Circuit's ruling became the law of the case. *See Perry v. Golub,* No. 81–7278, slip op. at 2–3 (11th Cir. Oct. 25, 1982) (Fifth Circuit precedent held case moot after May 1976 despite district court's opinion to the contrary and intervening transfer of appellate jurisdiction to the newly formed Eleventh Circuit).

**5.** The court of appeals' "nod" was merely in recognition of the preliminary nature of the district court's factual findings and not in support of Ms. Falkowski's other allegations. At the 1975 preliminary-injunction hearing, the district court made numerous findings of fact suggesting improper conduct on Ms. Falkowski's part. *See* Perry v. Golub, 400 F.Supp. 409, 411–15 (N.D.Ala.1975), *vacated as moot,* 594 F.2d 862 (5th Cir.1979). The Fifth Circuit evidently felt it unfair to leave these preliminary findings on the record absent the opportunity for a full hearing on the merits.

Numerous other controversies have emerged in the *Perry v. Golub* litigation since that time, including a dispute over the district court's retention of jurisdiction in the case after 1976 [6] and a petition by Mr. Perry for costs and attorneys' fees.[7] Ms. Falkowski meanwhile had instituted parallel litigation of her own against EEOC superiors which has followed an equally labyrinthine procedural course.[8] The details of these other proceedings, however, are not immediately relevant to the case before us.

### 2. *The* Perry v. Falkowski *Litigation*

During the pendency of the *Perry v. Golub* litigation, Ms. Falkowski and Mr. Perry remained together in the Birmingham office on terms that few would describe as cordial. In an attempt to gather evidence corroborating her charges of continuing insubordination by Mr. Perry, Ms. Falkowski secretly recorded a confrontation with him that occurred in her office on July 18, 1977. Besides insubordination, the recording revealed a regrettable stream of obscenities and racial epithets on Mr. Perry's part. *See* Appendix at 11–19 (transcript of tape recording). What Ms. Falkowski's conduct might have been in the absence of a recording device known only to herself, one can only conjecture. The incident served to underscore, however, the depths to which professional relationships and behavior had sunk in the Birmingham office by mid-1977.

On the basis of the tape-recording incident, the EEOC moved to terminate both Mr. Perry and Ms. Falkowski from its employ. The Commission justified its action in Mr. Perry's case on the basis of the tape's content. In Ms. Falkowski's case, the Commission found that she had violated an internal agency order prohibiting nonconsensual recording of official conversations by agency personnel. *See Perry v. Golub,* 464 F.Supp. at 1019 & n. 2 (citing EEOC Order No. 165).[9]

Provoked by Ms. Falkowski's ruse and disturbed by the resulting personnel action, Mr. Perry filed suit in 1978 in federal district court against Ms. Falkowski and EEOC chairwoman Eleanor Norton. The complaint sought a declaratory judgment that Mr. Perry's constitutional and statutory rights had been violated, and prayed for compensatory and punitive damages totalling over five million dollars. This step commenced the *Perry v. Falkowski* litigation, the second suit for which plaintiff-appellant today seeks reimbursement and representation from the government in this court.

Action on Mr. Perry's complaint was delayed until 1981, when the district court granted his request for voluntary dismissal. *See Perry v. Falkowski,* No. CV78–PT–0935–S (N.D.Ala. Apr. 17, 1981) (unpublished opinion). At the same time, Ms. Falkowski moved for leave to file counterclaims for defamation and other charges against Mr. Perry, but the district court denied her motion. *Id.* Ms. Falkowski then filed a petition for costs and attorneys' fees as a prevailing defendant against Mr. Perry. The district court denied this petition as well, and the Eleventh Circuit affirmed the decision on appeal. Ms. Falkowski's petition for certiorari on this last issue has recently been denied by the United States Supreme Court. *See Perry v. Falkowski,* No. CV78–PT–0935–S (N.D.Ala. July 22, 1981) (unpublished opinion denying

---

**6.** Perry v. Golub, 464 F.Supp. 1016 (N.D.Ala. 1978), *vacated as moot,* 599 F.2d 1052 (5th Cir.1979). *See also supra* note 4.

**7.** *See* Perry v. Golub, 25 Empl.Prac.Dec. (CCH) ¶ 31,488 (N.D.Ala.1980) (granting plaintiff's petition for costs and attorneys' fees), *aff'd in part and vacated and remanded in part,* 691 F.2d 510 (11th Cir.1982).

**8.** *See, e.g.,* Falkowski v. Perry, No. 76–G–0545–S (N.D.Ala. Feb. 13, 1981) (unpublished opinion granting in part plaintiff's petition for

costs and attorneys' fees), *aff'd,* 691 F.2d 510 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); Falkowski v. Perry, 464 F.Supp. 1016 (N.D.Ala. 1978), *vacated as moot,* 599 F.2d 1051 (5th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980).

**9.** Although EEOC later abandoned its efforts to discharge Ms. Falkowski and Mr. Perry, it did succeed in having her permanently transferred out of the Birmingham office.

defendant's petition for costs and attorneys' fees), *aff'd,* 691 F.2d 510 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).

### B. *Plaintiff's Efforts to Secure Government Representation and Reimbursement*

Of greater relevance to the present appeal have been Ms. Falkowski's earlier, unsuccessful attempts to secure representation by government counsel, or, in the alternative, reimbursement for her expenses in hiring private counsel, in the *Perry v. Golub* and *Perry v. Falkowski* litigations. Since late 1976, EEOC attorneys have apparently never undertaken to represent Ms. Falkowski in any of the proceedings in either case, even though government counsel has been provided to each of her co-defendants. To date, Ms. Falkowski has amassed substantial legal bills conducting her own defense with private attorneys in these cases.

### 1. *Plaintiff's Efforts to Secure Representation and Reimbursement in* Perry v. Golub

Prior to the filing of Mr. Perry's complaint in *Perry v. Golub* in late August 1975, Ms. Falkowski had already filed two charges of employment discrimination against EEOC and her immediate supervisors in Atlanta. *See* Appendix at 162–63 (reproducing charges of July 9, 1975, and August 15, 1975). These charges alleged that the agency and her superiors were undermining her authority by granting preferential treatment to a black male subordinate (presumably Mr. Perry) and by failing to support her in efforts to control insubordination on his part. The charges recited sex and race discrimination, as well as retaliation for her earlier 1973 suit, as the motives for the agency's conduct.

On December 12, 1976, over eighteen months later, Ms. Falkowski filed an amendment to these earlier charges with the then acting chairwoman of EEOC, Ethel Walsh. *See* Appendix at 168–69 (Memorandum from Evelyn Falkowski to Ethel Walsh (December 12, 1976)). Although nowhere in her statement did Ms. Falkowski request representation or reimbursement from the agency, she did in somewhat oblique terms challenge the quality of her representation by EEOC attorneys in the *Perry v. Golub* litigation. The amendment alleged, for example, that she had been "prejudiced before a Federal District judge," apparently by agency counsel's failure to rebut unsubstantiated charges and perjured testimony introduced against her (again, presumably by Mr. Perry) in the case. *Id.*

Without entering into excruciating detail on this point, suffice it to say that at every turn in the ensuing administrative complaint and appeals process, arising out of not only these incidents but others as well, Ms. Falkowski continued to assert that EEOC for discriminatory and retaliatory reasons had failed to provide her with an adequate defense in the *Perry v. Golub* litigation. *See, e.g.,* Appendix at 178–79, 184–85, 189–90, 197, 202, 205, 281. Although in the context of these administrative proceedings she never raised a specific claim for representation or reimbursement linked to her charges of inadequate defense, we are willing to assume for purposes of the present appeal that the goal of her complaints was to secure agency legal assistance in clearing her name, promotions and retroactive raises denied her because of damage to her reputation, and finally some form of restitution for the legal expenses she incurred in carrying on her own defense with private counsel.

### 2. *Plaintiff's Efforts to Secure Representation and Reimbursement in* Perry v. Falkowski

Ms. Falkowski's efforts to secure government legal representation and reimbursement have been more explicit in the case of the *Perry v. Falkowski* litigation. Mr. Perry filed his initial complaint in that case on August 24, 1978. His suit was against Ms. Falkowski for secretly taping his outburst one year before and against EEOC chairwoman Norton for attempting to discharge him based on the tape's content. *See* Ap-

pendix at 108–10 (reproducing Mr. Perry's complaint). Although EEOC attorneys defended Ms. Norton in that action, they provided no defense for Ms. Falkowski at all.

After learning that EEOC attorneys would not defend her, Ms. Falkowski immediately requested that the Commission secure Department of Justice representation for her. What ensued was an episode of bureaucratic red tape and temporizing that did not end until May of the following year when DOJ finally denied Ms. Falkowski's request. *See* Appendix at 101–03 (declaration of John Seibert, Assistant Director of Federal Programs Branch, DOJ Civil Division).

Frustrated by the delay with which her request was being processed, Ms. Falkowski consulted with an EEO counselor at the Commission on November 20, 1978, and filed a corresponding administrative complaint one month later on December 19th. *See* Appendix at 189–90, 224, 281. In her interview and complaint, she charged that EEOC was continuing to discriminate and retaliate against her by, in effect, denying her legal defense in the *Perry v. Falkowski* suit. She demanded that appropriate representation be provided immediately. The counselor's report quoted EEOC legal counsel as saying that the Commission could not provide legal defense for Ms. Falkowski and that the matter had been forwarded to the Department of Justice for handling. *Id.* at 190 (Counselor's Survey of December 6, 1978).[10]

The reasons for the delay in processing Ms. Falkowski's request for counsel appear to have been multiple. First, no one informed her that she had to submit her petition directly to the Department of Justice rather than to her immediate employing agency, EEOC. Second, despite repeated requests from DOJ, EEOC failed to certify in writing that Ms. Falkowski had been acting within the scope of her official duties when she recorded her conversation

with Mr. Perry the year before. That certification did not come until December 20, 1978. Finally, between that date and May of the following year, the Department of Justice simply failed to act on Ms. Falkowski's request. By that point, of course, the request had been transformed from one for representation only into one for representation *and* reimbursement, since the deadline for filing an answer to the *Perry v. Falkowski* complaint had already long since passed and Ms. Falkowski had had no choice but to utilize private counsel of her own.

Finally, on May 17, 1979, Assistant Attorney General Barbara Babcock wrote to EEOC and Ms. Falkowski to deny the request for representation and reimbursement in connection with the *Perry v. Falkowski* suit. Her letter gave the reasons for the Department's action as follows:

> In light of the clearly personal nature of the dispute between Ms. Falkowski and Mr. Perry giving rise to the litigation, the tape recording by Ms. Falkowski of Mr. Perry's remarks in contravention of an internal EEOC directive, and the existence of separate actions by Ms. Falkowski and Mr. Perry challenging proposed personnel actions against them, I do not believe it is in the interest of the United States to reimburse Ms. Falkowski for her legal costs. Accordingly, pursuant to 28 C.F.R. § 50.15(a)(2), I am denying Ms. Falkowski's request.

Appendix at 116. Following this denial, Ms. Falkowski asked the Department several times to reconsider its action, but each time DOJ acted to reaffirm its earlier decision.

II

Following these twists and turns in the federal courts of Alabama and Georgia and before the various administrative agencies here in Washington, Ms. Falkowski finally filed suit against EEOC and DOJ in United States District Court for the District of

---

**10.** The EEOC took final action on Ms. Falkowski's administrative complaint two years later, when it cancelled the complaint based on the District Court's decision in the case presently before us. *See* Appendix at 281–82 (Letter from Gilbert Sandate to Evelyn Falkowski (March 24, 1982)).

Columbia. In her complaint, she alleged three statutory causes of action: (1) one against EEOC under Title VII for discriminatory and retaliatory denial of adequate government legal representation in *Perry v. Golub,* (2) another against EEOC under Title VII for its actions in the *Perry v. Falkowski* litigation, and (3) a final cause of action under the APA against the Department of Justice for arbitrary and capricious denial of government legal representation in *Perry v. Falkowski.*[11] *See* Brief for Appellant at 15–16; *infra* note 12.

Before filing an answer, the defendant government agencies moved in the alternative for dismissal or summary judgment. The District Court, in an unpublished opinion, granted the defendants' motion for summary judgment on all three statutory claims.[12]

As to the first cause of action, the District Court ruled that EEOC attorneys had actually represented Ms. Falkowski in the *Perry v. Golub* litigation, and that she therefore had no claim against the Commission for denial of legal counsel in that case. *See Falkowski v. EEOC,* No. 81–1776, slip op. at 1 n. 1 (D.D.C. Mar. 4, 1982). In the alternative, the District Court held that, even if Ms. Falkowski did have such a claim, it was time-barred by her failure to file a formal administrative complaint with the EEOC within thirty days after the

claim arose. *Id.* (citing 29 C.F.R. § 1613.-214(a)(1)(i) (1980)).

On Ms. Falkowski's second cause of action, the District Court noted that EEOC lacks authority to appoint or reimburse private legal counsel to defend agency personnel, and that the Commission's power is therefore limited to recommending such action to the Department of Justice. *Id.* at 2 (citing 28 U.S.C. § 517 (1976) and 28 C.F.R. §§ 50.15–50.16 (1980)). Because EEOC did recommend that DOJ reimburse Ms. Falkowski for her private legal expenses in *Perry v. Falkowski,* the District Court held that she had no claim against the Commission under Title VII for denial of legal counsel in that case either. Although Ms. Falkowski contended that the EEOC recommendations had been pretextual, the District Court noted that she had presented "no admissible evidence" to support this point, and had therefore failed to establish a prima facie case. *Id.*

Finally, as to the third cause of action, the District Court concluded that the Department of Justice had not acted arbitrarily or capriciously in denying Ms. Falkowski's request for government representation and reimbursement in *Perry v. Falkowski.* The court noted that the DOJ had considered Ms. Falkowski's request under the applicable statutes and regulations,[13] and

---

**11.** The Administrative Procedure Act, of course, does not confer independent subject matter jurisdiction on federal district courts to review federal agency action. Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). Rather, such jurisdiction is based on general federal question jurisdiction under 28 U.S.C. § 1331 (Supp. V 1981). The APA merely provides the appropriate scope of review, once jurisdiction is otherwise available.

**12.** Ms. Falkowski also alleged several constitutional causes of action under the first and fifth amendments which the District Court dismissed outright. *See* Falkowski v. EEOC, No. 81–1776, slip op. at 1–2 (D.D.C. Mar. 4, 1982). Plaintiff, however, has chosen not to appeal the dismissal of these claims. *See* Brief for Appellant at 15–16.

**13.** The Attorney General has promulgated regulations governing the representation of federal employees by government-provided legal coun-

sel in certain proceedings in which those employees are sued or subpoenaed in their individual capacity. *See* 28 C.F.R. §§ 50.15–50.16 (1982). Statutory authority for the regulations is claimed under 28 U.S.C. §§ 516–517 (1976) (reserving conduct of litigation involving federal officers to the Attorney General and permitting him to send officers of the Department of Justice into court to attend to the interests of the United States).

In general, the regulations provide that federal employees may be provided legal representation at government expense if such representation is in the interests of the United States and the conduct for which the employee seeks representation was committed within the scope of his employment. *See* 28 C.F.R. § 50.15(a) (1982). Unless it feels that representation is clearly unwarranted, the officer's employing agency is required to report to the Department of Justice whether the employee was acting within the scope of his employment, and whether the agency recommends representa-

had properly denied it as not "in the interest of the United States" in accordance with 28 C.F.R. § 50.15(a)(2) (1979). As evidence that the Department's conclusion on this issue had not been arbitrary or capricious, the District Court cited the three reasons spelled out in Assistant Attorney General Babcock's letter of May 17, 1979, quoted earlier in this opinion. *Falkowski v. EEOC,* slip op. at 2–3.

## III

The issue before us on this appeal is whether the District Court moved too quickly in granting summary judgment because genuine issues of material fact remain in the case. Rule 56(c) of the Federal Rules of Civil Procedure governs this issue and provides that summary judgment shall issue only when the pleadings and other materials before the court establish "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Accordingly, summary judgment is inappropriate unless the moving party can establish that the evidence presented by the parties unequivocally resolves all relevant factual and legal issues in its own favor, and that this is so even though the evidence is viewed in the light most favorable to the party opposing the motion.

Because the defendant government agencies failed to meet this burden with respect

to plaintiff's second and third causes of action, we hold that the District Court erred in granting summary judgment on those claims. In all other respects, we uphold the District Court's judgment, but modify certain of the grounds on which it based its ruling.

### A. Plaintiff's First Cause of Action

■ The District Court ruled that Ms. Falkowski had no cause of action under Title VII against EEOC for denial of legal expenses in *Perry v. Golub* because EEOC attorneys had actually represented her in that case. *Falkowski v. EEOC,* slip op. at 1 n. 1. In the alternative, the District Court held that, even if she did have such a claim, she had lost it by failing to file a formal administrative complaint with the Commission within thirty days after the claim arose. *Id.* Pretermitting the issue of whether Ms. Falkowski preserved her claim through timely administrative filing, we uphold the District Court on the first of the two grounds proposed.

In response to the District Court's ruling that EEOC attorneys actually represented her in the *Perry v. Golub* litigation, plaintiff argues that her claim goes, not to the fact of representation *vel non,* but to the adequacy of the representation that EEOC did provide. *See* Brief for Appellant at 23–27. Although we might otherwise be inclined to find merit in this position,[14] we

---

tion in his case. *Id.* § 50.15(a)(1). Under certain circumstances in which representation by DOJ attorneys would be ethically inappropriate, private counsel may be provided to the employee at government expense. *Id.* §§ 50.-15(a)(9)–(10), 50.16.

The Department takes the position that it will always provide representation for federal employees sued solely in their official capacity for equitable relief. *Id.* § 50.15(a)(1). *See also* United States Attorneys' Manual § 4–13.000 (1977). Employees sued in their individual capacity for money damages, however, must request representation through the procedures outlined above. So also, it appears, must employees who fall in between these two polar categories, e.g., employees sued in both their official and individual capacities for money damages and equitable relief. Ms. Falkowski fell into this latter intermediate category as a defendant in the *Perry v. Falkowski* suit.

The Attorney General's regulations were first published in the *Federal Register* on January 19, 1977, *see* Limitation for Representation of Federal Employees, 42 Fed.Reg. 5695 (1977), and later codified in the *Code of Federal Regulations, see* 28 C.F.R. §§ 50.15–50.16 (1977). Despite subsequent clarifying amendments, *see* 47 Fed.Reg. 8172 (1982), the regulations remain in substantially their original form.

14. It seems fairly clear that EEOC attorneys could not have provided Ms. Falkowski an adequate defense in *Perry v. Golub* because of the irreconcilable conflict of interest that existed between the agency and Ms. Falkowski in that case. On the very same day that EEOC superiors appeared as co-defendants with Ms. Falkowski in the *Perry v. Golub* preliminary-injunction hearing, she was bringing a motion against them and the agency in the same courthouse seeking to have her own transfer set

hold that plaintiff is collaterally estopped from challenging the adequacy of her representation by EEOC attorneys in the *Perry v. Golub* suit.

In August 1980, Ms. Falkowski filed a petition for costs and attorneys' fees as a prevailing plaintiff in *Falkowski v. Perry,* her own action against EEOC superiors briefly discussed earlier in this opinion. *See supra* note 8 and accompanying text. In her petition, she requested costs and attorneys' fees against the Commission arising, not only out of that action, but also out of her defense of the *Perry v. Golub* suit. This somewhat unusual request was based on the theory that Ms. Falkowski and EEOC had been adverse co-defendants in the *Perry v. Golub* litigation, and that to the extent that EEOC had abandoned its attempts to transfer her involuntarily, she had prevailed over the agency.

To support the conclusion that EEOC had been an adverse co-defendant in *Perry v. Golub,* Ms. Falkowski pointed to the defense that EEOC attorneys had provided her in that action, and contended that that defense had been not only inadequate but a sham. *See Falkowski v. Perry,* No. 76–G–0545–S, slip op. at 15 (N.D.Ala. Feb. 13, 1981) (unpublished opinion granting in part plaintiff's petition for costs and attorneys' fees), *aff'd,* 691 F.2d 510 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983). In denying this portion of Ms. Falkowski's petiton, the United States District Court for the Northern District of Alabama flatly rejected this line of argument, finding it "not substantiated by the facts." *Id.* at 16. *See also id.* at 18–19.

Under established principles of collateral estoppel, Ms. Falkowski is not now free to relitigate these same issues before this court. Even were we to disagree with the specific findings made by the district court in Alabama, plaintiff's remedy is not to be found in this forum but through direct appeal of the judgment of which those findings form an integral part.

Given that Ms. Falkowski is collaterally estopped from asserting a key element of her first cause of action, the District Court's grant of summary judgment against her on that claim is accordingly affirmed.

### B. *Plaintiff's Second Cause of Action*

■ Ms. Falkowski's second cause of action charged EEOC with discrimination and retaliation under Title VII arising out of the agency's handling of her request for government-provided legal counsel in *Perry v. Falkowski.* The District Court granted summary judgment on this claim because, to paraphrase the court's opinion, EEOC did all it could for Ms. Falkowski when it recommended that DOJ retain private legal counsel to represent her in the case. *Falkowski v. EEOC,* slip op. at 2. Although we agree with the District Court that EEOC lacks statutory authority to retain private counsel itself to defend agency officers in court,[15] the bare fact of formal Commission

---

aside as violative of the consent decree entered in her prior lawsuit against the agency. As adverse parties in related litigation arising out of the same underlying dispute, the Commission (in the persons of her superiors) and Ms. Falkowski could not be adequately represented by the same counsel as a matter of law, and it was highly improper for EEOC attorneys to undertake such dual representation. *See* United States Fidelity & Guar. Co. v. Louis A. Roser Co., 585 F.2d 932, 938–39 (8th Cir.1978); MODEL CODE OF PROFESSIONAL RESPONSIBILITY EC 5–15, DR 5–105 (1981).

These are arguments, however, that Ms. Falkowski should have presented in the Northern District of Alabama and the Eleventh Circuit, not in this court. *See infra* text following this note (discussing issue of collateral estoppel).

**15.** Section 516 of Title 28 provides that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, ... is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516 (1976). Although EEOC is authorized by law to send its own attorneys into court to represent the Commission, only EEOC attorneys appointed to regular federal service may act in this capacity. *See* 42 U.S.C. § 2000e–4(a), (b)(2) (1976 & Supp. V 1981). Accordingly, EEOC lacks statutory authority to hire private counsel to appear in court for any reason, not merely in cases involving agency officers as defendants.

Commission attorneys could not themselves represent Ms. Falkowski in the *Perry v. Fal-*

recommendation was not sufficient to support defendants' motion for summary judgment on this claim.

The relevant factual inquiry instead should have been whether EEOC acting out of discriminatory animus intentionally mishandled Ms. Falkowski's request so as to undercut the force of its formal recommendation on paper. This test admittedly places a heavy burden on plaintiff to show not only that the Commission acted out of legally proscribed motives, but also that its mishandling actually resulted in DOJ's final decision to deny her representation.

Viewing the evidence in the light most favorable to plaintiff, however, we are satisfied that the record reveals triable issues of fact on both of these points. The government does not contest, for example, that EEOC delayed for over three months in certifying that Ms. Falkowski had acted within the scope of her employment despite numerous requests for such certification from the Department of Justice. Although we express no opinion on the final resolution of this issue, it is certainly a reasonable inference that EEOC was wilfully dragging its feet because it did not wish government representation to be approved at all, or at least not in time to meet the Perry complaint. Moreover, a reasonable person might conclude that, once this lack of enthusiasm on the part of Ms. Falkowski's employing agency had been communicated to the Department of Justice, DOJ was

unlikely to act favorably on her request for government-provided legal counsel.

Because the government failed to dispel these obvious inferences of illegal motivation and resulting harm that arise from the Commission's dilatory handling of Ms. Falkowski's request, we conclude that genuine issues of material fact remain with respect to her second cause of action. The District Court's grant of summary judgment on this claim is therefore reversed.

### C. *Plaintiff's Third Cause of Action*

■ In her third cause of action, Ms. Falkowski cited the Department of Justice for arbitrary and capricious agency action in denying her request for government-provided legal counsel in *Perry v. Falkowski.* The District Court granted summary judgment on this claim because it found that the Department had not acted in contravention of the APA in turning down her request. *Falkowski v. EEOC,* slip op. at 2–3. We find, however, that the reasons for denial articulated by the Department are facially insufficient to establish the reasonableness of its decision. Moreover, the evidence suggests that DOJ may have accorded Ms. Falkowski disparate treatment under its existing regulations and practice. The rationality of the Department's decision therefore cannot be determined without further factual inquiry, and we accordingly hold that summary judgment as to this final cause of action was inappropriate.[16]

---

*kowski* litigation because of actual conflicts of interest that existed between her and the agency throughout this period. At the time of the *Perry v. Falkowski* suit, Ms. Falkowski had already gone into court to challenge her own proposed discharge by the agency based on the same 1977 tape-recording incident that had given rise to Mr. Perry's lawsuit. *See* Falkowski v. Perry, No. 76–G–0545–S, slip op. at 3–6 (N.D.Ala. Feb. 13, 1981) (unpublished opinion granting in part plaintiff's petition for costs and attorneys' fees), *aff'd,* 691 F.2d 510 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983). The agency therefore had interests adverse to Ms. Falkowski's in related litigation arising out of the same underlying dispute, and EEOC attorneys were ethically bound not to represent her in the *Perry v. Falkowski* suit. *See* United States Fidelity & Guar. Co. v. Louis A. Roser Co., 585 F.2d 932,

938–39 (8th Cir.1978); Model Code of Professional Responsibility EC 5–15, DR 5–105 (1981).

**16.** As an alternative ground for supporting the District Court's grant of summary judgment on this claim, the Department of Justice urges that its decision is unreviewable under the APA as action "committed to agency discretion" under 5 U.S.C. § 701(a)(2) (1976). *See* Brief for Defendants-Appellees at 31–38. In support of its position, the Department sets forth a detailed analysis following the three-factor test spelled out by this court in Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031, 1043–47 (D.C.Cir.1979). We have considered the government's arguments on this point and find them unpersuasive.

Under the first factor of the *Natural Resources* test, the Department relies particularly on the nonmandatory language of its own regu-

## 1. The Babcock Letter

In concluding that the Department of Justice did not act arbitrarily or capriciously in denying Ms. Falkowski's request for government counsel, the District Court relied heavily on the three reasons set forth in Assistant Attorney General Babcock's letter of May 17, 1977. Each of those reasons purported to show why reimbursing Ms. Falkowski for her legal expenses would not be "in the interest of the United States" as mandated by 28 C.F.R. § 50.15(a)(2) (1979). We conclude that the various rationales proposed by the Assistant Attorney General are insufficient on their face to support the government's motion for summary judgment on the issue of reasonableness under section 706(2)(A) of the APA.

The first reason cited in the Babcock letter for denying Ms. Falkowski's request was "the clearly personal nature of the dispute between Ms. Falkowski and Mr. Perry." This does not seem a rational reason for the conclusion based upon it. Indeed, most Title VII suits concerning individual incidents of discrimination or retaliation involve disputes intensely personal in nature. Why this happenstance justifies denying government legal representation to a federal officer sued by her immediate subordinate is not immediately apparent to this court. In fact, it would appear that government counsel represent federal officials as defendants in quite acrimonious Title VII actions on a regular basis. See, e.g., Carson v. Bolger, 510 F.Supp. 106 (E.D.Mo. 1981).

The second reason given by the Assistant Attorney General was "the tape recording by Ms. Falkowski of Mr. Perry's remarks in contravention of an internal EEOC directive." This rationale, as well, does not withstand scrutiny standing on its own. The departmental regulations cited in the Assistant Attorney General's letter provide for hiring private legal counsel at government expense to defend federal officials sued in their individual capacities, *even though those officials are simultaneously under federal criminal investigation for the same acts for which representation is provided.* See 28 C.F.R. § 50.15(a)(5) (1979). Indeed, in a 1977 letter to United States District Judge Gerhard Gesell, the Assistant

---

lations to conclude that plaintiff has no legally protectable interests to be safeguarded through judicial oversight. See Brief for Defendants-Appellees at 33 ("The Department of Justice Policy Statement ... merely provides that '[r]epresentation by private counsel at federal expense *may* be provided to a federal employee' if certain preconditions have been met.") (quoting 28 C.F.R. § 50.16(a) (1979) (emphasis added)). Yet the federal courts have long held discretionary denials of relief or assistance to be reviewable under the APA. See, e.g., Rassano v. INS, 492 F.2d 220, 227 (7th Cir.1974) (language in 8 U.S.C. § 1254 (1970) stating that "the Attorney General may, in his discretion, suspend deportation" does not bar review under the APA). The policy reasons supporting reviewability in such cases are clear: Although an aggrieved individual may have no "right" to the relief provided by the agency, he is entitled to an agency decision on his request that is at least rational and free from abuse of discretion.

Under the second factor of the *Natural Resources* test, DOJ argues that the burden of defending denial-of-representation decisions in court will divert scarce institutional resources from its congressionally assigned mission of defending other federal employees in court. Because judicial review inherently involves some costs of litigation, this fact alone cannot decide the issue of reviewability. Rather, the logic of the *Natural Resources* test rests on a pragmatic weighing of all three factors against the strong presumption of judicial review created by the APA. See 606 F.2d at 1043–44. Given the Department's broad latitude to determine when litigation on behalf of government defendants is in the interests of the United States, most challenges to its discretion can be handled at the dismissal or summary judgment stage. We do not believe that this reduced burden militates against the APA's presumption of reviewability.

Under the third factor, the Department points to the myriad issues bearing upon representation decisions and concludes that such determinations are inappropriate subjects for judicial review. This court appreciates the numerous legal, policy, and fiscal factors that impinge upon the Department's decisions in this area. Yet judicial review does not call for courts to substitute their own judgment for that of the agency. On the contrary, the reviewing court's scrutiny of substantive agency decisions is in most cases limited to determining *whether the reasons articulated by the agency make sense.* While this court has a modest appreciation for the limits of its abilities, we do not feel that such a task is beyond our powers.

Attorney General noted that DOJ had retained private counsel to defend numerous federal officials then under criminal investigation by the Department of Justice. *See* Letter from Assistant Attorney General Babcock to District Judge Gesell (May 1977), *reprinted in* STAFF OF SUBCOMM. ON ADMINISTRATIVE PRACTICE AND PROCEDURE OF THE SENATE COMM. ON THE JUDICIARY, 95TH CONG., 2d SESS., REPORT ON JUSTICE DEPARTMENT RETENTION OF PRIVATE LEGAL COUNSEL TO REPRESENT FEDERAL EMPLOYEES IN CIVIL LAWSUITS 150–55 (Comm. Print 1978). It is not clear why the alleged violation of an internal agency directive disqualifies a federal officer for government-provided legal representation and suspected criminal activity does not.

The third reason given for turning down Ms. Falkowski's request was "the existence of separate actions by Ms. Falkowski and Mr. Perry challenging proposed personnel actions against them." This rationale is, if anything, the least satisfactory of all. On its face, it appears retaliatory and, as such, an impermissible basis for agency action.[17] Federal officers cannot become ineligible for government-provided legal defense in individual-capacity suits merely because they have challenged earlier personnel actions against them. To conclude otherwise would impose an impermissible burden on the rights granted federal workers by Congress and the Constitution, in this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1976 & Supp. V 1981).

### 2. *Disparate Treatment*

At the time DOJ rendered its decision against Ms. Falkowski, cases in which federal defendants had been denied government-provided legal counsel were apparently few and far between. During 1977 and 1978, both houses of Congress conducted hearings into Department of Justice practice and policy regarding retention of private legal counsel to defend government officials in civil lawsuits. These investigations were prompted by the Department's escalating expenditures for private legal counsel in individual-capacity suits that had burgeoned following the Senate Watergate and Intelligence Committee hearings. *See* STAFF OF SUBCOMM. ON ADMINISTRATIVE PRACTICE AND PROCEDURE OF THE SENATE COMM. ON THE JUDICIARY, *supra,* at ix–xiv, 1.

A Senate committee staff report prepared following the 1977–78 hearings reviewed DOJ practice and policy in this area and concluded,

> Apparently, the Department's position is that it is in the public interest to defend any conduct which has not been held to be criminal. . . . The practical result is that, "however gross that conduct may seem to the layman," the Department has *not once* found the public interest to be independent grounds for refusing to represent an employee sued in his or her individual capacity when the Department has determined such employee was acting within the scope of his or her employment.

*Id.* at 6 (emphasis added).[18]

This finding hardly comports with the position taken by the Department in denying Ms. Falkowski's request for counsel, and raises a strong inference that her request was accorded disparate treatment in comparison to other applications recently processed by the Department. Because DOJ failed to explain this apparent incongruity in its treatment of similarly situated applicants, the District Court should have with-

---

**17.** The government in its brief asserts that the Assistant Attorney General's reference to the Perry and Falkowski litigation merely illustrates the extent of the personal feud between them. *See* Brief for Defendants-Appellees at 30 n.*. The problem with this interpretation is that Ms. Falkowski's suit was not against Bertram Perry, but against the EEOC and her administrative supervisors, including one Lowell Perry, former chairman of the EEOC. *See* Appendix at 74 n. 5.

**18.** The committee staff's conclusion parallels the position expressed by the Attorney General in the explanatory materials accompanying the initial promulgation of DOJ regulations in this area in January 1977. *See* Limitation for Representation of Federal Employees, 42 Fed.Reg. 5695 (1977) (Supplementary Information). For a discussion of these regulations, see *supra* note 13.

held final judgment on Ms. Falkowski's claim pending fuller development of the facts. *Cf. Contractors Transport Corp. v. United States,* 537 F.2d 1160, 1162 (4th Cir. 1976) (ICC order remanded for failure to explain agency's disparate treatment of similarly situated applicants).

After reviewing the reasons articulated in Assistant Attorney General Babcock's letter and considering the apparent contemporaneous practice of the Department of Justice, we conclude that the rationality of the Department's decision in Ms. Falkowski's case cannot be established absent further factual exploration. The District Court's grant of summary judgment on plaintiff's final claim was therefore inappropriate, and we accordingly reverse.[19]

### IV

On the basis of the filings and other documents before the District Court, summary judgment was properly granted with respect to plaintiff's first cause of action claiming reimbursement for her legal expenses in the *Perry v. Golub* case. As to her remaining two causes of action seeking representation and reimbursement in the *Perry v. Falkowski* litigation, we find that genuine issues of material fact remain in the case precluding summary judgment at this juncture. We therefore remand these two claims to the District Court for further proceedings in conformity with this opinion.

*It is so ordered.*

19. As an alternative ground for upholding the District Court's grant of summary judgment on all three statutory claims, the defendant government agencies argue that the relief plaintiff seeks is in essence money damages, and that neither the APA nor Title VII provides for such damages against the United States. *See* Brief for Defendants-Appellees at 38–43 (citing 5 U.S.C. § 702 (1976) and 42 U.S.C. § 2000e–5(g) (1976)). They therefore contend that plaintiff's suit is barred by the doctrine of sovereign immunity.

We do not find it necessary to characterize the attorneys' fees plaintiff seeks as money damages or some other form of relief. Should plaintiff prevail at the liability stage under Title VII and the APA, the most appropriate remedy would not appear to be an order compelling agency reimbursement of the withheld payment, but a remand to the Department of Justice to reconsider plaintiff's request free of any biased input from EEOC and on the basis of rational decisionmaking criteria. Such relief is clearly equitable in nature and not money damages.